IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TIMOTHY GREEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civ. No. 2:15-cv-2564-STA-cgc |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Timothy Green filed this action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), alleging that, while he was incarcerated at the Federal Correctional Institute ("FCI") in Talladega, Alabama, he received negligent medical care for a knee injury.[1] (ECF No. 1.) The United States has filed a motion for summary judgment (ECF No. 26), Plaintiff has filed a response to the motion (ECF No. 30), and the United States has filed a reply to the response. (ECF No. 33.) For the reasons set forth below, the motion for summary judgment is **GRANTED**.

Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] When deciding a motion for summary judgment, the court must review all the evidence and draw

---

[1] The FTCA allows plaintiffs to seek damages from the United States for certain torts committed by federal employees. 28 U.S.C. § 1346(b).

[2] Fed. R. Civ. P. 56(c).

1

all reasonable inferences in favor of the non-movant.[3] In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence."[4] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[7] The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."[8]

As an initial matter, the United States contends that Plaintiff has not complied with Rule 56.1 of the Local Rules of this Court. Local Rule 56.1(a) requires that any motion for summary judgment be "accompanied by a separate, concise statement of the material facts as to which the

---

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id.* at 251–52.

[8] *Celotex*, 477 U.S. at 322.

2

moving party contends there is no genuine issue for trial."[9] Any party opposing summary judgment must respond to each fact stated by the movant by agreeing that it is undisputed, agreeing that it is undisputed for purposes of ruling on the summary judgment motion only, or by demonstrating that the fact is disputed, with specific citations to the record.[10] "Failure to respond to a moving party's statement of material facts ... shall indicate that the asserted facts are not disputed for purposes of summary judgment."[11] Rule 56(e) of the Federal Rules of Civil

---

[9] Local Rule 56.1 provides as follows:

> (a) Moving Party. In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Fed. R. Civ. P. 56 shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record. If the movant contends that the opponent of the motion cannot produce evidence to create a genuine issue of material fact, the proponent shall affix to the memorandum copies of the precise portions of the record relied upon as evidence of this assertion.....
>
> (b) Non-moving Party. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:(1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed. Each disputed fact shall be filed with any memorandum in response to the motion. The response must be made on the document provided by the movant or another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. In addition, the non-movant's response may contain a concise statement of additional facts that the non-movant contends are material and as to which the nonmovant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

[10] LR 56.1(b).

[11] LR 56.1(d).

Procedure also provides that if a party "fails to properly address another party's assertion of fact ..., the court may consider the fact undisputed for purposes of the motion."[12]

In the present case, even after the United States pointed out in its reply that Plaintiff failed to respond to the statement of material facts, Plaintiff did not request leave to file a supplemental response. Thus, the Court will deem each of the United States' facts as undisputed for purposes of summary judgment.

## Statement of Material Facts[13]

1. On July 7, 2014, Plaintiff filed an administrative tort claim with the Federal Bureau of Prisons ("BOP"), alleging that he injured his left knee on August 8, 2012, while incarcerated at FCI in Talladega, Alabama.

2. In his administrative tort claim, Plaintiff complained that his August 8, 2012, injury was untreated for eight weeks and that, at the end of the eight week period, it was too late to surgically repair his "untreated fractured patella."

3. While incarcerated, Plaintiff received medical care from BOP staff health care providers working at FCI. For medical specialty services beyond those provided by BOP staff - such as x-rays, MRIs, and examinations by an orthopedic surgeon – the BOP contracted with non-federal providers to furnish those services to Plaintiff. Specifically, during the relevant time period, Plaintiff received the following treatment:

(a) August 9, 2012. Plaintiff reported to the FCI Health Services Clinic ("the Clinic") for morning sick call and reported that "[w]hile I was walking on the steps towards the recreation yard I was out of balance and twisted my left knee." BOP medical staff conducted a full examination of body systems, diagnosed knee sprain, provided prescription-strength pain

---

[12] Fed. R. Civ. P. 56(e)(2).

[13] (Def's Statement of Facts, ECF No. 26-1.)

reliever, wrapped Plaintiff's knee, offered crutches (declined), and prescribed five days of convalescence. They also told Plaintiff to "Follow-up at Sick Call as Needed."

(b) August 28, 2012. Plaintiff did not "follow-up at sick call" until nineteen days later after his initial visit. On that date, he complained of continued pain and other symptoms of his knee injury. Clinic staff examined him, continued the prescription for pain relief, wrapped the knee, offered crutches (declined), and ordered convalescence. They also ordered an x-ray and an MRI.

(c) October 4, 2012. Plaintiff missed his appointment for an x-ray of his knee.

(d) October 11, 2012. The Clinic had an outside contractor, DIANAssociates, perform an x-ray of Plaintiff's knee. Based on the radiology report, the Clinic continued the previous course of treatment, offered a knee brace, continued with the planned MRI, and ordered a consultation with an outside orthopedic specialist.

(e) October 19, 2012. Plaintiff had an MRI. The BOP sent him to a contractor, Coosa Valley Medical Center, for the procedure.

(f) October 25, 2012. The BOP sent Plaintiff to an outside orthopedic surgeon, Dr. Anthony Tropeano, for consultation. Dr. Tropeano reviewed the x-ray report and the MRI reports, and he examined Plaintiff. He recommended continuing the course of treatment the Clinic had already begun and recommended a follow-up examination.

(g) December 18, 2012. A Clinic physician reviewed Plaintiff's chart, including the report from Dr. Tropeano's consultative examination.

(h) January 8, 2013. Plaintiff reported to the Clinic with a complaint of continued soreness and decreased range of motion. The Clinic staff renewed the prescription pain reliever, issued a lower bunk permit, and told Plaintiff to "Follow-up at Sick Call as Needed.

(i) March 1, 2013. Plaintiff reported to the Clinic's Chronic Care sick call for follow-up examination and prescription renewal.

(j) March 21, 2013. Plaintiff reported to the Clinic's Chronic Care sick call for follow-up examination and prescription renewal. The Clinic ordered chest x-rays for conditions unrelated to the knee.

(k) April 4, 2013. Plaintiff missed the appointment for his chest x-ray.

(l) April 11, 2013. Plaintiff missed the appointment for his chest x-ray.

(m) April 18, 2013. Plaintiff missed the appointment for his chest x-ray.

(n) May 22, 2013. A Clinic physician ordered blood laboratory test for condition unrelated to the knee.

(o) June 10, 2013. Dr. Tropeano, the contracting orthopedic surgeon, saw Plaintiff again. Dr. Tropeano noted "no worsening of his symptomology" and administered injections of Lidocaine, Marcaine, and Depo-Medrol. He also recommended a follow-up examination in a few weeks.

(p) August 14, 2013. Plaintiff missed his appointment for a follow-up examination by Dr. Tropeano.

(q) August 26, 2013. Plaintiff reported to the Clinic sick call, complaining of conjunctivitis and continued knee pain.

(r) October 23, 2013. Plaintiff missed his appointment for a follow-up examination by Dr. Tropeano.

(s) October 25, 2013. Plaintiff reported to the Clinic sick call complaining of itchy swollen eyes.

(t) October 29, 2013. Plaintiff reported to the Clinic sick call complaining of itchy swollen eyes.

(u) October 31, 2013. Plaintiff was seen in the Clinic's Chronic Care for treatment of high blood pressure.

(v) December 18, 2013. After missing two prior appointments to see Dr. Tropeano, Plaintiff was seen on this date. Dr. Tropeano made a hand-written note to the chart, signed "AT." He noted that the "inj[ection] helped for 3 weeks" but the pain had returned. He recommended a bottom bunk and continued pain prescription. Dr. Tropeano also recommended a new MRI.

(w) May 5, 2014. Coosa Valley Medical Center did another MRI of Plaintiff's knee.

(x) May 13, 2014. A Clinic physician reviewed the MRI report and ordered another consultation with the orthopedist.

4. Plaintiff was released from custody on July 1, 2014.

5. Dr. Anthony Tropeano was not a federal employee. He saw BOP inmates, including Plaintiff, pursuant to his federal contract for those services. Similarly, DIANAssociates and Coosa Valley Medical Center (the x-ray and MRI providers) were non-federal entities.

6. After his release, Plaintiff went to Campbell Clinic for treatment by Dr. James W. Harkess. Dr. Harkess saw Plaintiff three times: August 1, 2014, September 12, 2014, and October 30, 2014. Dr. Harkess diagnosed chronic osteoarthritis and an ACL tear. The chronic degeneration from osteoarthritis had been seen in the two MRIs that the BOP received. The ACL tear that Dr. Harness found was a new problem not present when Plaintiff had his two previous MRIs.

7. Dr. Harkess' final chart note reads as follows:

> HISTORY OF PRESENT ILLNESS: Timothy Green returns for a recheck of the
> ACL tear of the left knee with some early osteoarthritic changes. He does have

some mild instability symptoms in the knee. No definite locking. He is working on the exercises on his own. He is able to work. He overall seems to be doing reasonably well with it. It swells intermittently. He really does not have to take medication for it. His gait looks normal walking without support. There is no effusion present today. He does have a positive Lachman with pivot shift. Negative McMurray, both medial and lateral. He retains full motion. Minimal crepitation with active motion.

. . . .

TREATMENT: We discussed options and I do not think he should consider any surgical intervention for this just yet, although certainly may require total knee replacement in the future. He is going to live with it as is for now. I will be happy to see him back if he is having more in the way of mechanical symptoms or flare-up of pain with his arthritic changes.

8. The Clinic at FCI Talladega had open sick call, and Plaintiff could report to sick call as he saw fit. This is confirmed by BOP medical record notations to "Follow-up at Sick Call as Needed."

9. Plaintiff did not disclose any expert witness pursuant to Fed. R. Civ. P. 26(a)(2).

<u>Analysis</u>

Plaintiff alleges that, after injuring his left knee on August 8, 2012, at FCI Talladega, he sustained substantial injuries as the result of "months of delayed treatment and failure to provide correct treatment" by the BOP.[14] According to Plaintiff, the BOP violated the applicable standard of medical care (1) by failing to promptly treat his knee injury and (2) by failing to properly treat his knee injury. Plaintiff contends that summary judgment should be denied because "there are genuine issues of material fact about whether BOP deviated from the standard of care and how that deviation caused Plaintiff's knee injury."[15]

The United States contends that it is entitled to summary judgment on the following grounds: Plaintiff did not administratively exhaust his failure to properly treat claim; Plaintiff

---

[14] (Pl's Resp. p. 1, ECF No. 30.)

[15] (*Id.*)

cannot recover under the FTCA for claims arising from the acts or omissions of government contractors who provided medical services; Plaintiff does not have the expert proof required under Alabama law to prove his claims; and there was no delay in the treatment that Plaintiff received after his knee injury.[16]

Exhaustion of Administrative Remedies

Plaintiff has filed suit under the FTCA, 28 U.S.C. §§ 1346(b), 2401(b), and 2671-2680. In his administrative claim, filed upon his release from prison on July 7, 2014, Plaintiff contended that the BOP failed to promptly treat his August 8, 2012, injury for a period of eight weeks and that, subsequently, it was too late to surgically repair his "untreated fractured patella."[17] The United States argues that Plaintiff exhausted only the claim that he "was denied medical treatment for 8 weeks" – from August 8, 2012 through October 8, 2012, and has not exhausted any claim for negligence occurring after October 8, 2012.

Federal courts have jurisdiction over civil actions for claims against the United States for money damages.[18] To bring a tort claim against the Government, the plaintiff must first establish that the Government has waived its sovereign immunity.[19] The FTCA is the exclusive waiver of sovereign immunity for tort claims against the Government, its agencies, and its employees acting within the scope of their employment.[20]

---

[16] (Def's Mot., ECF No. 26.)

[17] (Admin. Tort Claim, ECF No. 26-3.) Plaintiff also contended that the BOP caused his slip-and-fall injury, but Plaintiff has not pursued that claim in his lawsuit.

[18] 28 U.S.C. § 1346(b).

[19] *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991) (per curiam) (citations omitted).

[20] 28 U.S.C. § 2679. *See Arbour v. Jenkins*, 903 F.2d 416, 419 (6th Cir. 1990).

However, the waiver is not unlimited. The Government has waived its sovereign immunity for FTCA claims only insofar as the plaintiff has exhausted his administrative remedies.

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.[21]

"The filing of an administrative claim is jurisdictional and is an absolute, non-waivable prerequisite to maintaining a civil action against the United States for damages arising from the alleged wrongful acts of a federal employee."[22] "If the agency denies the claim or fails to dispose of it within six months, the claimant may file a civil action in federal court."[23] "Failure to exhaust administrative remedies deprives a federal court of jurisdiction over the claim."[24]

In the present case, the Court finds that Plaintiff has exhausted his administrative remedies on his claims that he received no medical care for his injury for a period of eight weeks

---

[21] 28 U.S.C. § 2675(a).

[22] *Tornichio v. United States*, 263 F. Supp.2d 1090, 1099 (N.D. Ohio 2002) (citing *McNeil v. United States*, 508 U.S. 106 (1993) and *Conn v. United States*, 867 F.2d 916 (6th Cir. 1989)). *See also Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008)("[I]f the administrative requirements of the FTCA have not been fulfilled, the case must be dismissed for lack of jurisdiction.").

[23] *Holt v. Morgan*, 79 F. App'x 139 (6th Cir. 2003). The Supreme Court has held that "the FTCA's time bars are nonjurisdictional and [are] subject to equitable tolling." *United States v. Kwai Fun Wong*, 136 S. Ct. 1625, 1638 (2015) (explaining that equitable tolling is available "when a party has pursued his rights diligently but some extraordinary circumstance prevents him from meeting a deadline.") Failure to exhaust, as opposed to untimely exhaustion, remains a jurisdictional defect.

[24] *Id.* (citing *Glarner v. U.S. Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994)).

and that he should have been told during this period that he needed surgery for his "untreated fractured patella." Plaintiff has not exhausted his administrative remedies on any other claim(s) except for injuries that flow from his failure to be referred for surgery. Therefore, the Court's jurisdiction is limited to these claims.

Acts or Omissions of Government Contractors Under the FTCA

The FTCA waives the United States' sovereign immunity for damages resulting from injuries caused by the negligent acts or omissions of "any employee of the Government" acting within the scope of the employee's duties.[25] "Employee of the government" includes "officers or employees of any federal agency," and "federal agency" but "does not include any contractor with the United States."[26]

It is undisputed that Dr. Anthony Tropeano was not a federal employee. Instead, he was a physician in private practice, with a contract to treat inmates with orthopedic problems.[27] The same is true of DIANAssociates and Coosa Valley Medical Center, the providers who performed and interpreted the x-rays and MRIs.[28] Plaintiff cannot recover for any acts or omissions of these entities or Dr. Tropeano because the FTCA does not waive sovereign immunity for non-employee claims.[29]

---

[25] 28 U.S.C. § 1346(b)(1).

[26] *See Berrien v. United States*, 711 F.3d 654, 658 (6th Cir. 2013)(quoting 28 U.S.C. § 2671).

[27] (Def's Statement of Facts, ¶ 5, ECF No. 26-1.)

[28] (*Id.*)

[29] Even if Dr. Tropeano's status as a contractor were not a complete defense, a claim based on his conduct would still fail as a matter of law. Whether Dr. Tropeano should have provided different orthopedic treatment is not a matter of common knowledge that lay persons can judge, and Plaintiff has presented no expert proof that Dr. Tropeano breached the standard of care. Instead, the only expert opinion in the record concerning Dr. Tropeano is that of Dr. Harkness, and he testified that Dr. Tropeano performed "a satisfactory examination specifically

Applicable State Law Under the FTCA - Alabama Medical Liability Act

The parties agree that, under the FTCA, the substantive tort law of Alabama applies because Plaintiff's alleged injuries occurred in Alabama.[30] The parties further agree that the applicable state law in this case is the Alabama Medical Liability Act ("AMLA"), Ala. Code § § 6-5-540, *et seq.*, in that the AMLA applies to any action against a health care provider who is alleged to have provided substandard care or who failed to treat an injury.[31]

> To prevail in a medical-malpractice action under the Alabama Medical Liability Act ("AMLA"), § 6–5–480 et seq. and § 6–5–541 et seq., Ala. Code 1975, a plaintiff must establish 1) the appropriate standard of care, 2) that the defendant health-care provider breached that standard of care, and 3) a proximate causal connection between the health-care provider's alleged breach and the identified injury. *Morgan v. Publix Super Markets, Inc.*, 138 So.3d 982, 986 (Ala. 2013).
> …
> With regard to proximate causation in an AMLA case, this Court has stated that "the plaintiff must prove, through expert medical testimony, that the alleged negligence *probably* caused, rather than only *possibly* caused, the plaintiff's injury." *University of Alabama Health Servs. Found. v. Bush*, 638 So.2d 794, 802 (Ala. 1994) (emphasis added). *See also Bradford v. McGee*, 534 So.2d 1076, 1079 (Ala. 1988) ("[T]he plaintiff [in a medical-malpractice action] must adduce some evidence indicating that the alleged negligence (the breach of the appropriate standard of care) probably caused the injury. A mere possibility is insufficient.").[32]

---

address[ing] the anterior cruciate ligament" by performing the same Lachman test that Dr. Harkess used. Dr. Harkess further testified, "But you have an examination that appeared to be perfectly satisfactory by an orthopedic surgeon who addressed the issue. So I wouldn't say that it was unsatisfactory. [An ACL tear] may not have been present at that point." And, "I have no reason to question [Dr. Tropeano's] review. His notes seem perfectly satisfactory to me." (Harkness Depo., pp. 24- 25, ECF No. 33-1.)

[30] *See Shipp v United States*, 212 F. App'x 393, 397 (6th Cir. 2006); 28 U.S.C. § 1346(b)(1).

[31] *See Ex Parte Vanderwall*, 2015 WL 5725153 at *11 (Ala. 2015) (The AMLA "applies to conduct that is, or that is reasonably related to, the provision of health-care services allegedly resulting in a medical injury.")

[32] *Kraselsky ex rel. Estate of Kraselsky v. Calderwood*, 166 So. 3d 115, 118-19 (Ala. 2014).

12

The AMLA imposes a "substantial evidence" burden of proof on Plaintiff.[33] "Substantial evidence is . . . evidence that would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed."[34] This is a higher standard than "reasonable satisfaction."[35]

In the present case, to the extent that Plaintiff alleges that he received no treatment for his injury during the relevant time period, the undisputed facts show that Plaintiff did, in fact, receive treatment. The day after his accident, Plaintiff reported to the Clinic and complained of his knee injury. He was examined, put on prescription-strength pain medication, had his knee wrapped, was offered crutches, and was prescribed a period of convalescence.[36] Plaintiff was told to report to the Clinic as needed.[37] However, he did not return for nineteen days, at which time Clinic personnel added orders for x-rays and an MRI to the treatment plan.[38] From the day after his injury until his release, Plaintiff had twenty-four Clinic appointments and walk-in encounters, including appointments where he was a "no-show."[39] Additionally, medical specialty services such as x-rays, MRIs, and examinations by an orthopedic surgeon were provided by non-federal contract providers.[40]

---

[33] Ala. Code 6-5-549.

[34] Ala. Code 6-5-542(5).

[35] *Cackowski v. Wal-Mart Stores, Inc.*, 767 So.2d 319, 322 (Ala. 2000).

[36] (BOP Medical Records, ECF No 26-4.)

[37] Plaintiff acknowledged in his deposition that the BOP has an open sick-call policy. (Green Depo., p. 18, ECF No. 26-7.)

[38] (BOP Medical Records, ECF No 26-4.)

[39] (*Id.*)

[40] (*Id.*)

Accordingly, the United States is entitled to judgment as a matter of law on Plaintiff's failure to promptly treat claim because the undisputed facts show that Plaintiff did get treatment – immediately after the injury, during the following eight weeks, and continuing until his release.

As for Plaintiff's failure to properly treat claim, as determined above, the only aspect of that claim that has been exhausted is Plaintiff's contention that he should have been told he needed surgery at some point during the eight weeks following his injury. Plaintiff has presented no expert proof on this claim.

Although as noted above, evidence of medical malpractice generally must be proven by expert testimony, a "narrow exception" to this rule exists when the lack of skill or care "is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it."[41] Examples falling into this narrow exception are when: (1) a foreign object, such as a sponge, remains in a patient's body after surgery; (2) the injury is unrelated to the condition for which the plaintiff sought treatment; (3) a plaintiff relies on an authoritative medical treatise to prove what is or is not proper; or (4) the plaintiff himself is a medical expert.[42]

None of these examples are applicable to Plaintiff's claim that he should have been told he needed surgery.[43] Moreover, Plaintiff admits in his response that "surgical intervention was

---

[41] *Ex parte HealthSouth Corp.*, 851 So. 2d 33, 38 (Ala. 2002) (citing *Tuscaloosa Orthopedic Appliance Co. v. Wyatt*, 460 So.2d 156, 161 (Ala. 1984), *Dimoff v. Maitre*, 432 So.2d 1225, 1226–27 (Ala. 1983), and *Lloyd Noland Found., Inc. v. Harris*, 295 Ala. 63, 66, 322 So.2d 709, 711 (1975)).

[42] *Id.* (citing *Anderson v. Alabama Reference Laboratories*, 778 So.2d 806, 811 (Ala. 2000)).

[43] Plaintiff has cited various medical treatises to support his contention that a radiograph should have been ordered after his injury (Pl's Resp., p. 11, ECF No. 30), but he has presented no

not required."[44] Additionally, after Plaintiff's release from prison, Dr. Harkness opined that surgical intervention was not warranted.[45] Therefore, the Court finds that the United States is entitled to summary judgment on this claim.

To the extent that Plaintiff did, in fact, exhaust other aspects of his failure to properly treat claim, the United States is also entitled to summary judgment because he has failed to submit expert testimony required under the AMLA.

Section 6-5-484 of the AMLA imposes a legal duty on physicians and other medical care providers to exercise the degree of reasonable care, diligence, and skill that reasonably competent physicians/medical care providers in the national medical community would ordinarily exercise when acting in the same or similar circumstances.[46] The burden is on the plaintiff to show by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and due diligence as similarly situated health care providers in the same general line of practice.[47] The similarly situated health care provider must testify as to (1) the appropriate standard of care, (2) a deviation from that standard of care, and (3) whether the deviation proximately caused the injury.[48] A similarly-situated healthcare provider is one who is (1) licensed by the appropriate regulatory board or agency of Alabama or some other state, (2)

---

treatises indicating that his BOP medical providers were negligent in not referring him for surgery.

[44] (*Id.* at p. 9.)

[45] (Harkness Depo. p. 14, ECF No. 30-4.)

[46] *Bradford v. McGee*, 534 So.2d 1076 (Ala. 1988) (citing *Keebler v. Winfield Carraway Hospital*, 531 So.2d 841 (Ala. 1988)).

[47] *Biggers v. Johnson*, 659 So.2d 108, 110 (Ala. 1995).

[48] *Jones v. Bradford*, 623 So.2d. 1112, 1114-5 (Ala. 1993).

trained and experienced in that same specialty, (3) certified by an appropriate American Board in that same specialty, and (4) has practiced in this specialty during the year preceding the date that alleged breach of the standard of care occurred.[49] Plaintiff contends that no expert is needed in his case because of the common knowledge and medical treatise exceptions discussed above.

Plaintiff argues that it is common knowledge that the first response by medical providers to an injured knee should be to order an x-ray and MRI. Here, the evidence shows that, on Plaintiff's first visit to the Clinic, staff examined his knee, bandaged it, gave him pain relievers, and told him to come back to daily sick call if his knee did not get better. Plaintiff did not return until nineteen days later, and, at that time, the Clinic ordered x-rays and MRI. Plaintiff was a no-show for the first x-ray appointment.[50] The fact that Dr. Harkness immediately ordered x-rays upon first examining Plaintiff two years after his injury is not evidence that Clinic staff should have ordered them the day after Plaintiff's injury.[51]

Moreover, the United States' expert, Allan R. Goldstein, M.D., has opined that Plaintiff's injury was evaluated and treated appropriately by Clinic staff.[52] Plaintiff has not refuted this testimony. Thus, the Court finds that whether a patient presenting with a knee injury should or should not immediately be referred for x-rays and/or an MRI is not within the common

---

[49] *Wilson v. United States*, 2014 WL 3974669 *9 (N.D. Ala. 2014) (citing Alabama Code § 6–5–548(c) (1993)).

[50] (BOP Medical Records, ECF No 26-4.)

[51] (Pl's Resp., p. 8, ECF No. 30.)

[52] (Goldstein Report, ECF No. 26-8.) Although Dr. Goldstein is not an orthopedist and is not qualified to testify about the work of Dr. Tropeano, as a board certified internist who meets the locale requirements of the AMLA, he is qualified to give an opinion about the care provided by BOP medical staff who provide primary care to inmates. (*Id.*)

knowledge of a lay person, and Plaintiff cannot rely on this exception to the AMLA's expert requirement.

Plaintiff also attempts to prove his medical malpractice claim through reliance on medical texts and treatises. Plaintiff has referenced various medical textbooks and articles for the propositions that "radiographs should be routinely obtained for every patient who presents with a knee injury" and "studies in orthopedics show that 'radiographs are among the most commonly ordered imaging studies for traumatic injury to the knee joint.'"[53]

Although evidence of medical malpractice may be shown by reliance on an authoritative textbook or treatise,[54] when a medical malpractice plaintiff relies on a medical text or treatise, the plaintiff must prove that the text or treatise is authoritative.[55] "Extracts from [a] treatise . . . 'are not admissible unless the treatise is first approved by an expert as authoritative and standard,' and is relevant to the issue for which it is presented . . . ."[56]

In the present case, Plaintiff has not only failed to attach relevant excerpts from the textbooks and articles, he has offered no proof that the textbooks and articles cited to are authoritative. Therefore, he cannot rely on them to prove his claim.

---

[53] (Pl's Resp., p. 11, ECF No. 30.)

[54] *Anderson*, 778 So.2d at 811.

[55] *See* 31 *Am. Jur. Proof of Facts* 2d 443 (citing *Bobo v. Bryant*, 706 So. 2d 763 (Ala. Civ. App. 1997), *reh'g denied*, (Nov. 21, 1997)) ("Extracts from treatise are not admissible unless treatise is first approved by expert as authoritative and standard, and is relevant to issue for which it is presented.").

[56] *Bobo,* 706 So. 2d at 766 (citing *Johnson v. McMurray*, 461 So.2d 775, 779 (Ala. 1984) (quoting C. Gamble, *McElroy's Alabama Evidence*, § 258.01(2),(3) (3d ed. 1977))). The *Bobo* Court rejected the plaintiff's reliance on a medical textbook to prove her medical malpractice claim because she "failed to have the extracts upon which she relied approved by an expert as authoritative and standard." *Id.*

Moreover, the textbooks and articles do not address the causation element of Plaintiff's case. Even if the Court were to find that the textbooks and articles were authoritative, nothing cited by Plaintiff establishes that the timing of his x-rays and MRIs proximately caused any injury. He has submitted no expert proof that an earlier x-ray or earlier MRI would have changed the course of treatment or the outcome.

Because none of the exceptions to the requirement of expert testimony under the AMLA applies to the facts of this case, Plaintiff was required to present medical expert testimony in opposition to the motion for summary judgment of the United States, but he failed to do so.[57] Accordingly, the United States is entitled to judgment as a matter of law, and the motion for summary judgment of the United States is **GRANTED**.

IT IS SO ORDERED.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 3, 2017.

---

[57] *See Dews v. Mobile Infirmary Ass'n*, 659 So.2d 61 (Ala. 1995) (explaining that, when a defendant in a medical malpractice case moves for summary judgment and makes the requisite prima facie showing of non-liability, the plaintiff must present substantial evidence that the alleged the breach of the appropriate standard of care probably caused the injury.) *See also University of Alabama Health Services v. Bush*, 638 So.2d 794, 802 (Ala. 1994) (finding that expert medical testimony that the alleged negligence probably caused, rather than only possibly caused, the injury must be offered to prove causation in a medical malpractice case).